UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

NOSAKHARE ONUMONU,

           Plaintiff,           Case No. 1:20-cv-816

v.                                  Honorable Hala Y. Jarbou

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

           Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections, Washington, Davids, Barber, and Moull.

## Discussion

**I.    Factual Allegations**

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events

about which he complains occurred at that facility. Plaintiff sues the Michigan Department of Corrections (MDOC), its Director Heidi Washington, and the following ICF officials: Warden John Davids; Inspector Unknown Barber; Sergeant Unknown Moull; and Correctional Officers R.A. Wilson, Unknown Floyd, Unknown Tunnel, Unknown Betterly, Unknown Downing, and Unknown Officers #1 through #4 (Unknown Parties ##1-4).

On March 26, 2018, when Plaintiff left his ICF kitchen job, he was ordered to strip for a search. Plaintiff asked Defendant Wilson why a strip search was necessary after Plaintiff had already passed through two metal detectors. Defendant Wilson responded, "[I]t's the kitchen rule." (Compl., ECF No. 1, PageID.5.) Plaintiff asked Wilson what the kitchen rule was and where it could be found. Wilson responded, "[W]ho do you think you are? You want to see the rule? I'll show you the rule, after you see it, since you want to be a smart ass, I'm going to strip search you every time you leave the kitchen, you are going to get naked for me every day." (*Id.*)

On April 5, 2018, as Plaintiff left his kitchen job, Defendant Wilson again ordered Plaintiff to "drop them draws [sic] and get naked." (*Id.*, PageID.4.) When Plaintiff complied, Defendant Wilson commented, "[I]t must be cold outside, I see you shriveled up a little." (*Id.*)

Plaintiff mailed a Prison Rape Elimination Act (PREA) grievance to the MDOC Internal Affairs department on April 7, 2018, complaining that Defendant Wilson had sexually harassed him. On April 9, 2018, Plaintiff called the PREA hotline to report the alleged sexual harassment. Plaintiff was called to the ICF control center by Inspector Barber on April 10, 2018, and Defendant Barber interviewed Plaintiff about his PREA hotline complaint. On April 11, Plaintiff received Defendant Barber's memo, advising Plaintiff that his PREA complaint was being forwarded to the second-shift officer, Defendant Moull. A few days later, Assistant Deputy Warden Minard (not a Defendant) posted a flyer in the food-service change area, advising that "all kitchen workers will be stripped [sic] searched daily." (*Id.*, PageID.5.)

Defendant Moull called Plaintiff to the counselor's office on May 22, 2018, at approximately 8:00 p.m. Moull advised Plaintiff, "I am about to render my decision, are you sure you want to go through with this? It can get bad for you." (*Id.*) Plaintiff responded that he wished to follow through.

On June 10, 2018, Defendant Betterly called Plaintiff to the visiting room. While Plaintiff was visiting with his parents, Defendants Betterly, Floyd, Tunnel, Downing, and Unknown Officers ##1-4, at the direction of Defendant Bledsoe, left the building and proceeded to the outside of the visiting room window, where they pointed their shotguns at Plaintiff and his parents for a short while before returning to the building. After returning their weapons, these Defendants again passed by the window of the visiting room, smiling at Plaintiff and/or giving him sinister looks. Plaintiff contends that Defendants' threatening actions constituted felonious assault and were taken in retaliation for Plaintiff having filed a PREA grievance against Defendant Wilson.

Plaintiff filed a grievance the following day, June 11, alleging assault, intimidation, and retaliation. Also on June 11, Plaintiff's mother and an attorney wrote separate letters to Defendant Washington, informing her of the threatening acts. Two weeks later, during another visit, Plaintiff's mother informed him that an unknown female officer had told her, "[F]or everyone involved, it's best if he drops the PREA." (*Id.*, PageID.6.) Later in the visit, Plaintiff and his mother witnessed the facility executing a proper perimeter drill, with officers wearing the correct equipment, carrying weapons, and walking in formation along the parking lot walkway. The drill differed greatly from the improper formation that Plaintiff and his parents witnessed on June 10, 2018.

On June 27, 2018, Defendant Moull concluded his PREA investigation and mailed Plaintiff a copy of the findings. Plaintiff alleges that he, his mother, and a private investigator

have submitted Freedom of Information Act requests for all investigative reports and surveillance videos in connection with the June 10, 2018, events.

Plaintiff seeks compensatory and punitive damages, together with declaratory and injunctive relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Defendant MDOC

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). Therefore, Plaintiff's complaint seeks monetary relief against a defendant who is immune from such relief, Plaintiff's claim against the MDOC is properly dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b), and 42 U.S.C. § 1997e(c).

In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, Plaintiff's claim against the MDOC is also properly dismissed for failure to state a claim under § 1983.

## IV.   Defendants Washington, Davids, and Barber

Plaintiff alleges that Defendants Washington and Davids are liable for the actions of the other Defendants, due to their responsibilities for the operations of the entire MDOC and ICF, respectively. He also arguably suggests that Defendants Washington, Davids, and Barber are liable because they failed to investigate or act on his grievances against the other officers.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has failed to allege that Defendants Washington and Davids, by failing to supervise their subordinates or denying his grievances, engaged in any active unconstitutional

6

behavior. In addition, he fails to allege that Defendant Barber did more than forward his PREA grievance to Defendant Moull, conduct that also falls short of active unconstitutional behavior. *See Shehee*, 199 F.3d at 300. Accordingly, Plaintiff fails to state a claim against Defendants Washington, Davids, and Barber.

## V. Defendant Moull

Plaintiff alleges that Defendant Moull failed to investigate and improperly denied his PREA grievance. He also alleges that, because Defendant Moull offered him the opportunity to withdraw his grievance before Moull entered his findings and warned that "[i]t can get bad for you," Defendant Moull retaliated against him for filing the grievance. In addition, Plaintiff arguably intends to claim that Defendant Moull violated his right to due process and his right to petition government in the handling of the grievance.

### A. Investigation and Denial of Grievance

To the extent that Plaintiff complains that Defendant Moull failed to adequately investigate and decide his PREA grievance, he fails to allege an actionable § 1983 claim. As previously discussed, § 1983 liability may not be imposed simply because an official denied an administrative grievance or failed to act based upon information contained in a grievance. *Shehee*, 199 F.3d at 300. Plaintiff therefore fails to state a claim based on Moull's denial of the PREA grievance.

### B. Due Process

Plaintiff suggests, however, that he may have a due process right to a meaningful grievance process, with which Defendant Moull improperly interfered. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430

7

(6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Moull's conduct in the handling of the grievance did not deprive Plaintiff of due process.

      **C.**      **Right to Petition Government**

Plaintiff arguably suggests that the Defendant Moull's inadequate investigation and processing of his grievance violated Plaintiff's First Amendment right to petition the government for redress. The First Amendment bars the government from generally prohibiting expressions in the form of petitions for redress and from imposing sanctions on one who petitions for redress. *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 464 (1979). In *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999), the Sixth Circuit explained the nature of the right:

> The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. "The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). The First Amendment protects Apple's right to petition, but his suit is founded completely on a mistaken reading of that Amendment. A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views.

*Apple*, 183 F.3d at 479; *see also BPNC, Inc. v. Taft*, 147 F. App'x 525, 531 (6th Cir. 2005) ("The purpose of the Petition Clause, though, is to ensure that citizens may communicate their will through direct petition to the legislature and government officials."). Thus, Plaintiff has a First Amendment right to file grievances against prison officials, *Herron v. Harrison*, 203 F. 3d 410, 415

(6th Cir. 2000), but the amendment does not require the government to consider, respond to, or grant relief on that grievance. Here, according to Plaintiff's own allegations, Defendant Moull in no way interfered with Plaintiff's ability to file a grievance. Plaintiff therefore fails to state a claim under the Petition Clause of the First Amendment.

### D.      Retaliation

Plaintiff claims that Defendant Moull retaliated against him for filing a grievance. Plaintiff's allegations against Defendant Moull are limited to his complaint that Moull improperly investigated and denied his PREA grievance and asked Plaintiff whether he wished to withdraw his grievance, stating that things could get difficult for Plaintiff if he continued to press his claim.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). However, the right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from

9

adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). As the Supreme Court held in *Lewis v. Casey*, "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.").

Although it is far from clear that Plaintiff's PREA grievance was nonfrivolous, the Court will assume without deciding that Plaintiff's allegations are sufficient to support the first prong of his retaliation claim. Plaintiff, however, fails to allege facts demonstrating that Defendant Moull took any adverse action against him.

The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). According to Plaintiff's allegations, Moull simply concluded that the PREA grievance was meritless and denied it. As earlier discussed, the denial of a grievance falls short of active conduct that could violate § 1983. *Shehee*, 199 F.3d at 300. For the same reason it cannot be considered adverse action sufficient to support a First Amendment claim.

In addition, nothing about Defendant Moull's query whether Plaintiff wished to withdraw his grievance or continue to pursue the grievance, even accompanied by the quoted statement, suggests that Moull himself took any action against Plaintiff, threatened to take such action, or encouraged others to take action. Moull denied the grievance more than two weeks before other Defendants allegedly formed up to threaten Plaintiff with shotguns. Plaintiff has alleged no facts connecting Defendant Moull's conduct with that of the other Defendants.

Plaintiff's allegations, even construed broadly, fail to support the second prong of the retaliation test. The Court therefore will dismiss this final claim against Defendant Moull.

## VI.     Defendants Bledsoe, Floyd, Tunnel, Betterly, Downing, & Unknown Parties ##1 to 4

Plaintiff alleges that Defendants Bledsoe, Wilson, Floyd, Tunnel, Betterly, Downing, and Unknown Parties ##1 through 4 retaliated against him for filing a PREA grievance against Defendant Wilson. Specifically, Plaintiff contends that, by getting into a firing squad formation and pointing shotguns at Plaintiff while he was in the visiting room with his parents and by giving Plaintiff threatening looks in relation to their use of the shotguns, these Defendants engaged in retaliatory conduct. Plaintiff also alleges that Defendant Wilson subjected him to retaliatory strip searches because he complained about Wilson's first strip search.

Upon initial review, the Court concludes that Plaintiff's allegations against Defendants Bledsoe, Wilson, Floyd, Tunnel, Betterly, Downing, and Unknown Parties ##1 to 4 are sufficient to state a retaliation claim.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants MDOC, Washington, Davids, Barber, and Moull will be dismissed on grounds of immunity and failure to state a claim, under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). Plaintiff's retaliation claims against Defendants Bledsoe, Wilson, Floyd, Tunnel, Betterly, Downing, and Unknown Parties ##1 to 4 remain in the case.

An order consistent with this opinion will be entered.


Dated:   October 20, 2020                    /s/ HALA Y. JARBOU
                                             Hala Y. Jarbou
                                             United States District Judge