UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NOSAKHARE ONUMONU #303121,

    Plaintiff,                                Hon. Hala Y. Jarbou

v.                                          Case No. 1:20-cv-816

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by a prisoner incarcerated with the Michigan Department of Corrections (MDOC). Plaintiff's remaining claim is that Defendants Matthew Bledsoe, Terrance Floyd, Roy Betterly, James Downing, and Robert Tunell violated his rights under the First Amendment by retaliating against him for engaging in protected activity. Now before me is Defendants' Motion for Summary Judgment. (ECF No. 93.) Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** the motion and dismiss the complaint **with prejudice**.

**I. Background**

Plaintiff is currently incarcerated at the Lakeland Correctional Facility, but his retaliation claim arose while he was incarcerated at the Ionia Correctional Facility (ICF) during 2018. On March 26, 2018, while leaving his work assignment in Food Service, Plaintiff questioned previously-dismissed Defendant Corrections Officer Ray Wilson about the need to strip search workers leaving their kitchen jobs. Wilson responded, "it's the kitchen rule," and when Plaintiff inquired further, Wilson threatened to strip-search Plaintiff every time he left the kitchen. (ECF

No. 1 at PageID.5.) On April 5, 2018, as Plaintiff was leaving his job, Wilson told him to "drop them draws and get naked." After Plaintiff complied, Wilson joked, "it must be cold outside, I see you shriveled up a little." (*Id.* at PageID.4)

On April 7, 2018, Plaintiff mailed a grievance to the MDOC's Internal Affairs Department complaining about Wilson's alleged "sexual harassment." (*Id.* at PageID.5.) On April 9, 2018, Plaintiff called the "confidential" Prison Rape Elimination Act (PREA) hotline to make a verbal report of Wilson's conduct that Plaintiff had reported in the Internal Affairs grievance. The MDOC assigned Sergeant Walter Moull to investigate the PREA complaint against Wilson. Moull interviewed Plaintiff twice, on April 19, 2018, and May 17, 2018. (ECF No. 89-1 at PageID.513, 517.) After completing his investigation, Moull found insufficient evidence that Wilson had sexually harassed Plaintiff. (*Id.*) Moull concluded his investigation and forwarded his report to Assistant Deputy Warden Miniard on or about May 18, 2018. (*Id.* at PageID.513.) Accordingly, the investigation was closed.

On June 10, 2018, Defendant Betterly called Plaintiff for a visit with his mother and father in the unit's visiting room. About two hours later, Defendant Bledsoe conducted a shotgun training drill on the grassy area immediately adjacent to the building and the visiting room window. Defendants Floyd, Betterly, Downing, and Tunell were participants in the drill. (ECF No. 1 at PageID.6.) Plaintiff claims that Defendant Bledsoe had the participants form a firing squad line only several feet away from Plaintiff and his parents, and instructed them to aim their shotguns at Plaintiff and his parents. Plaintiff alleges that, after the event was completed, the participants passed by the interior visiting room window and stared at Plaintiff "smiling with a sinister look." (*Id.*) Plaintiff alleges that this "intimidating act of felonious assault" was retaliation for Plaintiff's

2

PREA grievance against Wilson, who was not a participant in the drill. (*Id.*) Plaintiff filed a grievance about the incident the following day.

The shotgun incident was a training drill. As shown on the video Defendants filed with the Court and as described in the investigation report attached to the affidavit from ICF Litigation Coordinator Keven Towns (ECF No. 94-2), after the participants exited the building, Defendant Bledsoe had them form a line on the grass adjacent to the building and the visiting room window and instructed them to aim their shotguns in the direction of the building and the visiting room window for a brief period of time. Defendant Bledsoe asserts that he was unaware that Level II visits were occurring at the time of the drill and that he could not see into the window due to the sun's reflection off the window. He further claims that he did not realize that anyone was present in the visiting room until after the drill was completed and the squad was marching back into the facility. (ECF No. 70-1 at PageID.325.) Defendants Betterly, Downing, Floyd, and Tunell all state that they were not involved in determining the location of the drill and were unaware that Plaintiff or any other prisoner was present in the visiting room at the time of the drill. (ECF No. 70-2 at PageID.329; ECF No. 70-3 at PageID.333; ECF No. 70-4 at PageID.337; ECF No. 70-5 at PageID.341.) In any event, MDOC Internal Affairs investigated the incident and determined that, in conducting the drill, Defendant Bledsoe was performing a regular duty within the scope of his authority, and the squad members were simply following his orders. (ECF No. 94-2 at PageID.656.) Nonetheless, the investigation concluded that Bledsoe's act of conducting the drill in the chosen area with prisoners and visitors present violated two work rules. (*Id.* at PageID.648, 656.)

The video filed with the Court shows Plaintiff present in the visiting room with his parents at the time of the incident. It also shows another prisoner with his visitors (presumably family) sitting directly in front of the window, while Plaintiff and his parents were sitting away from it.

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. Discussion

A plaintiff must prove the following elements to establish a prima facie case of retaliation: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To satisfy the causal connection requirement, the plaintiff must show that the defendant's retaliatory motive was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, __ U.S. __, 139 S. Ct. 1715, 1722 (2019).

Defendants contend that they are entitled to summary judgment because Plaintiff's claim fails on the first and third elements of his prima facie case. They further argue that they are entitled to qualified immunity. I conclude that Plaintiff's claim fails on the third element and that summary judgment should be granted on that basis, as set forth below. As an initial matter, however, I briefly address Defendants' protected conduct argument.[1]

### A.     Protected Conduct

It is well established that "[a]n inmate has a First Amendment right to file grievances against prison officials, provided that the grievance is non-frivolous." *Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) (citing *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001), and *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). In addition, courts have recognized a prisoner's filing or initiation of a PREA complaint or report as conduct protected by the First Amendment. *See, e.g.*, *Jackson v. Wicking*, No. 3:20-cv-249, 2020 WL 6874963, at *3 (M.D. Tenn. Nov. 23, 2020) (citing *Gennoe v. Washburn*, No. 3:19-cv-478, 2019 WL 5693929, at *6 (M.D. Tenn. Nov. 4, 2019)) ("The pursuit of a prison grievance—including, presumably, a complaint under PREA—is protected conduct, so long as the grievance is not frivolous."); *Treadwell v. King*, No. 2:20-cv-10280, 2020 WL 815589, at *2 (E.D. Mich. Feb. 19, 2020) ("Plaintiff has alleged facts sufficient to support the first element of a First Amendment retaliation claim as he asserts that he filed a PREA complaint against two of the named defendants.").

Defendants contend that Plaintiff was not engaged in protected conduct because his PREA complaint was both legally and factually frivolous. They first argue that the complaint, which

---

[1] To the extent Plaintiff alleges a claim of retaliation based on the posting of a flyer in the kitchen regarding strip searches a few days after Plaintiff initiated his PREA complaint, that claim is not properly before the Court because it was not in the complaint. Plaintiff sought to amend his complaint to add such claim late in this case, but the Court denied his motion for leave to amend. (ECF No. 92; ECF No. 107.)

5

asserted that Wilson's comment, "it must be cold outside, I see you shriveled up a little," was sexual harassment, was legally frivolous because it amounted to nothing more than verbal harassment. In *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018), the Sixth Circuit recognized that cases from the Sixth Circuit "suggest that a prisoner's grievance is frivolous when the underlying grievance itself is de minimis," including when the prisoner simply complains about verbal abuse by a prison official. *Id.* at 264 (citing *Scott v. Kilchermann*, No. 99-1711, 2000 WL 1434456, at *2 (6th Cir. Sept. 18, 2000) (stating that "[a]n inmate has no constitutionally protected right to be free from verbal abuse")). While Defendants' arguments might be persuasive in other contexts, it is important to note that this was a complaint about sexual harassment, which is addressed by MDOC Policy Directive 03.03.140. Under that policy directive, staff-on-prisoner sexual harassment "[i]ncludes . . . verbal comments . . . of a sexual nature to a prisoner by an employee, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing and profane or obscene language or gestures." Mich. Dep't of Corr. Policy Directive 03.03.140 ¶ G (effective 04/24/2017). At least arguably, Wilson's alleged comments eluding to the size of Plaintiff's penis could be considered a "sexually suggestive or derogatory comment[] about body," and thus, sexual harassment. Plaintiff's PREA complaint therefore cannot be considered legally frivolous. *See Brown v. Bott*, No. 21-2834, 2022 WL 3449219, at *3–4 (6th Cir. June 22, 2022) (reversing screening dismissal of retaliation claim on the basis that the plaintiff's threat to file a PREA complaint against the defendant for staring at his bare chest was frivolous, because such conduct could amount to "voyeurism" under Policy Directive 03.03.140).

Defendants' contention that the PREA complaint was factually frivolous is also unpersuasive. Defendants point to Sergeant Moull's two investigative interviews of Plaintiff. They note that in the first interview, Plaintiff did not even mention Wilson's alleged statement, while in

the second interview, when Moull asked Plaintiff about the statement, Plaintiff acknowledged writing about it but had no comment when Moull asked Plaintiff why he had not mentioned the statement during the first interview. (ECF No. 94 at PageID.632 (citing ECF No. 89-1 at PageID.517)).) While Plaintiff's interview responses could arguably show that Plaintiff's PREA grievance was frivolous, they provide no basis to conclude as a matter of law that the grievance was factually frivolous. The fact that Plaintiff mentioned Wilson's alleged statement in his Internal Affairs grievance (ECF No. 89-1 at PageID.460) is alone enough to refute the inference that Defendants seek to draw from Plaintiff's interview answers. Moreover, Moull's finding of insufficient evidence to support the alleged violation provides no basis to conclude that Plaintiff's PREA claim was factually frivolous. *See Webb v. Golladay*, No. 2:19-cv-110, 2022 WL 4369931, at *3 (W.D. Mich. May 12, 2022), *report and recommendation adopted*, 2022 WL 4365860 (W.D. Mich. Sept. 21, 2022) (declining to employ denial of a grievance on the merits as the standard for determining frivolousness).

Apart from the PREA complaint, Plaintiff contends that his complaint to Wilson about strip searches on March 26, 2018, constituted protected conduct. (ECF No. 103 at PageID.755.) In response, Defendants cite Plaintiff's Step I grievance following the June 10, 2018 incident (ECF No. 48-3 at PageID.236) and his verified complaint in this case (ECF No. 1 at PageID.9), both of which assert that the shotgun incident constituted retaliation for the PREA complaint. Defendants argue that Plaintiff has never asserted that his complaint to Wilson motivated the shotgun incident. (ECF No. 106 at PageID.833.) While Defendants are correct, they overlook that the Court has previously acknowledged Plaintiff's assertion that his complaint to Wilson on March 26, 2018, about strip-searches constituted protected conduct. (ECF No. 59 at PageID.273–74; ECF No. 62

7

at PageID.287.) Whether the shotgun incident is causally connected to Plaintiff's March 26 complaint to Wilson is another matter.

### B. Causal Connection

As set forth above, to meet his burden on the third element of his claim, Plaintiff must present evidence showing that Defendants took the alleged retaliatory act (pointing their shotguns at Plaintiff) because of his protected activity. A prison official cannot unlawfully retaliate against a prisoner because of his protected conduct if the official is unaware of the protected conduct in the first instance. *See Mulhall v. Ashcroft*, 287 F.3d 543, 554 (6th Cir. 2002) (concluding that the district court did not err in granting summary judgment on the plaintiff's Title VII retaliation claim where the plaintiff "failed to produce evidence sufficient to establish that the officials taking the adverse . . . action knew of his protected activity"); *Thaddeus-X*, 175 F.3d at n.3 (noting that the third element of a retaliation claim captures the defendant's required knowledge: "the defendant must have known about the protected activity in order for it to have motivated the adverse action"); *Spearman v. Heyns*, No. 20-cv-11558, 2020 WL 9455199, at *6 (E.D. Mich. Sept. 14, 2020), *report and recommendation adopted*, 2021 WL 1220869 (E.D. Mich. Mar. 31, 2021) ("Spearman cannot establish the causal connection element of his prima face case if the decision-maker was unaware of any protected conduct."). Here, Defendants deny any knowledge of Plaintiff's PREA complaint. (ECF No. 70-1 at PageID.326; ECF No. 70-2 at PageID.329; ECF No. 70-3 at PageID.333; ECF No. 70-4 at PageID.337; ECF No. 70-5 at PageID.341.)

Plaintiff has not responded with admissible evidence (or evidence that could be presented in admissible form at trial) demonstrating that any Defendant was aware of his PREA complaint or, for that matter, his March 26, 2018 complaint to Wilson. In his deposition, when asked whether he had any basis to believe that Defendant Bledsoe was aware of the PREA complaint, Plaintiff stated, "Other than just mentioning me by name, no." (ECF no. 94-3 at PageID.711.) As for the

remaining Defendants, Plaintiff surmised that they knew because ICF was a small facility ("only 240 people"). (*Id.* at PageID.712.) In his response, Plaintiff adds that Wilson worked with Defendants Bledsoe and Betterly at ICF and asserts that it is undisputed that corrections officers for the MDOC "consider themselves a 'BROTHERHOOD'" who "support each other in matters dealing with prisoners."[2] (ECF No. 103 at PageID.761.) Plaintiff further posits that Defendants Bledsoe and Betterly would have had knowledge of Plaintiff's PREA complaint because they would have been assigned to monitor Plaintiff for retaliation following his complaint for a period of 90 days, pursuant to paragraph PPP of Policy Directive 03.03.140. Plaintiff also asserts that his telephone calls and JPay messages also would have been monitored, apparently by Bledsoe or Betterly. (*Id.* at PageID.102–03.)

Consistent with his allegation in his complaint that he "*believes* [the shotgun incident] was an act of retaliation . . . for filing a (PREA) complaint against their fellow corrections officer R. WILSON" (ECF No. 1 at PageID.6 (italics added)), all of this is simply Plaintiff's speculation and conjecture, not evidence. In addition, as Defendants note, Plaintiff erroneously relies on the version of Policy Directive 03.03.140 that became effective as of April 5, 2021—long after Plaintiff initiated his PREA complaint in April 2018. (ECF No. 103-1 at PageID.784.) The applicable version, which was effective as of April 24, 2017 (ECF No. 104-4 at PageID.2017), did not contain a paragraph PPP nor, as far as I can discern, a monitoring requirement. Moreover, paragraph PPP of the later version applies only to prisoners who report "sexual abuse." But Plaintiff reported "sexual harassment," not "sexual abuse," which the April 5, 2021 version identifies as distinct acts

---

[2] Plaintiff also mentions Assistant Deputy Warden Miniard and Moull, but they are not Defendants in this matter and have no factual involvement in the retaliatory act at issue. Similarly, Plaintiff's assertions throughout his response that Wilson violated MDOC policy and/or procedures is immaterial to the claims and issues remaining in this action because Wilson is no longer in the case.

9

or conduct. Mich. Dep't of Corr. Policy Directive 03.03.140 ¶¶ S. and T. Finally, Plaintiff has presented no evidence showing that either Bledsoe or Betterly was actually assigned to monitor Plaintiff. At bottom, Plaintiff cannot sustain his summary judgment burden by reliance on these unsupported assertions. "A party cannot defeat summary judgment with 'conclusory allegations, speculation, and unsubstantiated assertions.'" *Jennings v. County of Monroe*, 630 F. App'x 547, 555 (6th Cir. 2015) (quoting *Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 894 (6th Cir. 2003)); *see also Harrow Prods., Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 2010 (6th Cir. 1995) (noting that "rank speculation is insufficient to withstand summary judgment"); *cf.* 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727. 2 (4th ed. 2021) (observing that "evidence in opposition to [a summary judgment] motion that clearly is without any force," such as evidence based on "mere suspicions," "is insufficient to raise a genuine issue").

Finally, it is also worth noting that Plaintiff has not presented any admissible evidence showing that Defendant Bledsoe was aware that Plaintiff was in the visiting room at the time of the incident. Bledsoe and all other Defendants state that they were unaware that anyone was in the visiting room at the time of the incident. (ECF No. 70-1 at PageID.325; ECF No. 70-2 at PageID.329; ECF No. 70-3 at PageID.333; ECF No. 70-4 at PageID.337; ECF No. 70-5 at PageID.341.) Bledsoe's knowledge of Plaintiff's presence in the visiting room is particularly important because it is undisputed that he led the training drill and chose the location. (ECF No. 70-1 at PageID.326; ECF No. 94-2 at PageID.655.) Even assuming *arguendo* that one or more squad member was aware that visits were occurring in the visiting room, Plaintiff has presented no evidence that such information was conveyed to Bledsoe prior to completion of the drill. Here again, Plaintiff relies on nothing more than supposition, rather than admissible evidence. He simply points to circumstances from which Defendants *could have been aware* that visits were

10

occurring, but he must do more than point to possibilities. More importantly, even knowledge that visits were occurring is not enough for Plaintiff to prove his retaliation claim, for his claim is that Bledsoe and the other Defendants conducted the drill at the chosen location for the specific purpose of retaliating against Plaintiff, not other prisoners or their visitors in general.

While I acknowledge that the circumstances in this case are odd—MDOC employees conducting a shotgun drill in front of the visiting room window, where they have never before performed the drill, two months after Plaintiff filed a PREA complaint against a coworker—unusual circumstances are not enough to establish a prima facie case of retaliation. Plaintiff's claim essentially boils down to *post hoc ergo propter hoc* (after this, therefore because of this). This logical fallacy, however, "is not a rule of legal causation." *Abbott v. Federal Forge, Inc.*, 912 F.2d 867, 875 (6th Cir. 1990). Therefore, Defendants' motion is properly granted on the lack of a causal connection.

In light of the foregoing analysis, I find no need to address Defendants' qualified immunity argument.

## IV.  Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants' motion for summary judgment (ECF No. 93) and dismiss Plaintiff's complaint with prejudice.

Dated: December 29, 2022         /s/ Sally J. Berens
                                                                    SALLY J. BERENS
                                                                    U.S. Magistrate Judge

## **NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).